IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANET SLOAN,** | CIVIL ACTION NO. 2:23cv2072 |
| *Plaintiff,* | |
| v. | |
| **UPMC MERCY,** | |
| *Defendant.* | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Janet Sloan, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant UPMC Mercy, of which the following is a statement:

## THE PARTIES

1. Plaintiff, Janet Sloan ("Plaintiff" or "Ms. Sloan") is an adult individual who currently resides at 3008 Blackerige Avenue Pittsburgh, Pennsylvania 15235.

2. Defendant UPMC Mercy ("Defendant" or "UPMC Mercy") is a non-profit organization based in Western Pennsylvania with a business address of 1400 Locust Street, Pittsburgh, Pennsylvania 15219.

3. At all times relevant, Defendant employed more than 15 employees and was a covered employer as defined by the ADA, FMLA, Title VII, and the PHRA.

## NATURE OF THE ACTION

4. This action arises under the Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act 42 U.S.C. § 12101, et seq. ( "ADA"), the Pennsylvania Human Relations Act 43 P.S. §§ 951-963 ("PHRA").

1

## JURISDICTION AND VENUE

5. Ms. Sloan is a resident and citizen of Pennsylvania and a substantial number of the events or omissions giving rise to the claims occurred in Western Pennsylvania. Therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6. This Court has supplemental jurisdiction over Ms. Sloan's state law claims pursuant to 28 U.S.C. §1367(a).

7. Ms. Sloan filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations on or about November 10, 2022, under case number 533-2023-00307, respectively.

8. On September 6, 2023, Ms. Sloan received her Notice of Right to Sue from the EEOC. The Complaint now timely follows.

## FACTUAL BACKGROUND

9. Ms. Sloan commenced employment with the Defendant on November 20, 2021 and was hired to work in Patient Registration within the Defendant's Emergency Department.

10. At all times relevant, Ms. Sloan was qualified to perform the essential functions of her job duties and she did them well.

11. Ms. Sloan's child was a disabled individual in that he was diagnosed with Epilepsy at the age of eight (8) years old, requiring hospital stays whenever experiencing cluster seizures.

12. Further, Ms. Sloan was the sole caregiver for her son, which occasionally necessitated the accommodation of approved ADA leave, in order to attend to her son's medical needs and appointments.

13. Ms. Sloan informed Patient Registration Supervisor, Karina Webber ("Ms. Webber") and Supervisor Julie Letcher ("Ms. Letcher"), about her son's disability and the need to for accommodation upon commencing her employment with the Defendant.

14. Subsequent to this notice, Ms. Webber and Ms. Letcher subjected Ms. Sloan to harassment, discrimination, and retaliation due to her need for an accommodation to take time off to care for her disabled son.

15. In July 2022, Ms. Sloan needed to take time off because her son experienced a cluster seizure, necessitating a hospital stay. Ms. Sloan adhered to Defendant's attendance policy by notifying Ms. Webber of her need for time off to care for her child.

16. On August 10, 2022, Ms. Sloan was discussing the possibility of covering a shift for one of her co-workers with Ms. Webber and other colleagues.

17. Ms. Webber denied Ms. Sloan's request to cover shifts, stating that she could not ask to make up the time, because she had previously called off in July of 2022.

18. Ms. Webber then raised her voice at Ms. Sloan and stated, "Yeah Janet [Ms. Sloan], you called off 3 times in a row" in front of Ms. Sloan's coworkers.

19. Ms. Webber was aware of that Ms. Sloan's prior call-offs were part of an ADA accommodation to care for her disabled son.

20. Naturally, Ms. Sloan was upset by this treatment and the discipline she received following her utilization of ADA leave.

21. Ms. Sloan defended herself, which apparently angered Ms. Webber. As a result, Ms. Webber disciplined Ms. Sloan further.

22. Upon information and belief, Ms. Webber held Ms. Sloan to different performance standards than non-disabled employees or employees who do not have to care for individuals with a disability (i.e., associational disability).

23. On August 11, 2022, Ms. Sloan was called into a meeting regarding the incident from the prior day with Ms. Webber and Ms. Letcher.

24. During the meeting, Ms. Sloan was told she would no longer be considered eligible to work overtime hours to any degree.

25. Prior to this incident, Defendant allowed Ms. Sloan to frequently work overtime hours each week in excess of 10 to 20 hours.

26. Indeed, the ability to work overtime hours was integral to Ms. Sloan's ability to work for Defendant, because she counted on the extra income derived from overtime. Ms. Sloan remarked that to her supervisors. Still, they persisted in an effort to retaliate.

27. Furthermore, Ms. Sloan was removed from the full-time schedule unilaterally. Which was effectively a termination and/or demotion.

28. Ms. Sloan immediately reported this retaliatory and discriminatory behavior to Defendant's Human Resources Department.

29. The following week, Ms. Webber again began to harass Ms. Sloan in the same manner as she did prior to the August 11, 2022, meeting.

30. During one incident, Ms. Sloan attempted to deescalate the situation by refusing to respond to Ms. Webber's comments.

31. Ms. Webber began yelling in Ms. Sloan's face and remained approximately one inch from her face before Ms. Sloan stood up and walked away.

32. In response, Ms. Webber continued to follow Ms. Sloan and continued to antagonize her in an attempt to provoke Ms. Sloan to react in an angry or insubordinate way.

33. Through information and belief, Ms. Webber harassed Ms. Sloan to create a situation where she was able to formally reprimand Ms. Sloan for insubordination or similar rules violations.

34. On September 8, 2022, Ms. Sloan was called into a meeting with a Human Resources Manager, Ms. Webber and Ms. Letcher. Ms. Sloan was asked to apologize to Ms. Webber for the incident that occurred on August 10, 2022.

35. Defendant offered an apology for the harassment, discrimination, and retaliation Ms. Sloan endured from Ms. Webber and Ms. Letcher.

36. Ms. Sloan was also granted her overtime privileges.

37. Afterward, Ms. Webber continued to bully Ms. Sloan.

38. Ms. Webber continuously scheduled Ms. Sloan for shifts when she knew Ms. Sloan was participating in clinicals for the nursing degree she was working toward.

39. On or about September 9, 2022, Ms. Sloan was written up for an irrelevant incident that happened several months before in retaliation for the meeting with Human Resources.

40. Ms. Webber and Ms. Letcher continued to search for ways to create a hostile work environment for Ms. Sloan.

41. The hostility was so extreme, Ms. Sloan had at least one panic attack in the Human Resources office.

42. Ms. Sloan was forced to seek therapy for mental health problems caused by the bullying in her workplace.

43. Ms. Sloan's grades in nursing school suffered as a result of the harassment from Ms. Webber and Ms. Letcher.

44. Ms. Sloan was eventually forced to leave school, as her nursing school was associated with Defendant and she no longer felt comfortable attending.

45. It is believed that Ms. Webber and Ms. Letcher have never been disciplined for their harassment of Ms. Sloan. In fact, after Ms. Sloan stopped attending work in February, Defendant promoted Ms. Webber.

46. To date, Ms. Sloan has not worked a shift since February 2023 and offered her two weeks notice. However, on the second day prior to her constructive termination became effective, Defendant placed Ms. Sloan's employment status as Casual.

47. Despite the availability of options such as FMLA leave to accommodate Ms. Sloan's needs, the Defendant neglected to initiate discussions on FMLA, ADA accommodation, or address the allegations of retaliation. Instead, the Defendant opted to terminate Ms. Sloan's position, reclassifying her as "casual," and subsequently omitted her from the work schedule.

48. It is crucial to note that the Defendant had received communications from J.P. Ward and Associates, LLC, prior to February 2023. It is plausible that Ms. Sloan's complaints, coupled with her legal representation, influenced the Defendant's decision to abstain from any discourse about her rights. This led to her termination, reclassification to "casual" status, and indefinite removal from the work schedule.

49. The Defendant failed to fulfill its obligation to contact Ms. Sloan, either to extend work offers or to schedule her for a return to work.

50. As a result of the workplace harassment, Ms. Sloan lost wages, and has experienced significant emotional distress, retaliation, and termination.

## COUNT I
### ASSOCIATED DISABILITY DISCRIMINATION
### IN VIOLATION OF THE ADA-AA AND THE PHRA

51. Ms. Sloan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

52. The ADA's "association provision" protects qualified individuals from employment discrimination based on the "known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

53. According to the Pennsylvania Human Relations Act (hereinafter "PHRA") 43 Pa. Cons. Stat. §995(l), "it shall be an unlawful discriminatory practice . . . to exclude or otherwise deny equal jobs or benefits to a person because of the handicap or disability of an individual with whom the person is known to have a relationship or association."

54. While the Third Circuit has not enunciated a test for purposes of establishing associational discrimination, it has enumerated certain circumstances under which a plaintiff might establish such a claim: (1) termination based on a disabled relative's perceived health care costs to the company; (2) termination based on fear of an employee contracting or spreading a relative's disease; (3) termination because an employee is somewhat distracted by a relative's disability, yet not so distracted that he requires accommodations to satisfactorily perform the functions of his job. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 511 n. 7 (3d Cir.2009) (citing *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir.2004)).

55. In order to establish a prima facie case for discrimination by association under ADA and survive a motion to dismiss for failure to state claim, a plaintiff must prove that: (1) she was

qualified at the time of the adverse employment action, (2) she was subject to an adverse employment action, (3) at the time of the adverse employment action, the plaintiff was known by his employer to have a relative or an associate with a disability, and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the termination decision. *Pollere v. USIG Pa., Inc.*, 136 F.Supp.3d 680, 685, No. 15–2421, 2015 WL 9260053, at *3 (E.D.Pa. Dec. 18, 2015) (citing *Barthalow v. David H. Martin Excavating, Inc.*, No. 5–2593, 2007 WL 2207897, at *3 (M.D.Pa. July 30. 2007)).

56. With respect to the third and fourth requirements, a plaintiff must show a "specific association with a disabled individual" and that the adverse employment decision was based on "unfounded stereotypes and assumptions arising from the employees' relationships with particular disabled persons." *Oliveras–Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26 (1st Cir.2000); see also Erdman, 582 F.3d at 510–11 (holding an employer's adverse employment action must be motivated by "unfounded stereotypes or assumptions ... about care required by disabled persons"). The nature of the relationship in question need not be familial. See 29 C.F.R. § 1630.8 (indicating a "family, business, social or other relationship or association").

57. Ms. Sloan was an employee of Defendant within the meaning of the ADA-AA and PHRA.

58. Defendant was an employer within the meaning of the ADA-AA and PHRA.

59. At all times relevant hereto, Defendant was an employer as defined by 42 U.S.C. 12111(5).

60. Ms. Sloan was perceived as having a disability as defined by 42 U.S.C. 12112(b)(4) because of the known disability of an individual with whom the Plaintiff is known to have a

8

relationship or association. Specifically, Ms. Sloan was associated with her child who had various health issues, including her son who was diagnosed with epilepsy.

61. Ms. Sloan was, and is, a "qualified individual" under the ADA-AA in that she is/was a person who meets legitimate skill, experience, education, or other requirements of an employment position that she held or sought, and who can/could perform the "essential functions" of a position she held or sought with or without reasonable accommodation.

62. Ms. Sloan disclosed her son's medical condition of epilepsy to Defendant, which is a condition that can constitute a disability under the ADA-AA.

63. Ms. Sloan is covered by the ADA-AA and PHRA because she is an individual who was excluded or denied equal jobs or benefits of overtime because of the known disability of her children with whom Ms. Sloan has a known relationship.

64. Epilepsy can be a debilitating condition that affects the brain and causes frequent seizures that need to be addressed with immediate medical attention.

65. Epilepsy can severely impact several areas of major life functions, including working, to the disabled individual and their caregivers.

66. Ms. Sloan disclosed the long-term effects that her son's epilepsy had on her, including, having to call off to address health concerns.

67. With actual knowledge of Ms. Sloan's medical condition, Defendant's Patient Registration Supervisor denied Ms. Sloan overtime and shift coverage opportunities based on her call-offs to address her son's seizures and health emergencies.

68. Defendant perceived Ms. Sloan as a person associated with an individual with a disability within the meaning of the ADA-AA.

69. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

70. As a direct and proximate cause of the aforementioned conduct, Ms. Sloan suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff, Janet Sloan hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Sloan requests this Court award her back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees and any other relief this Court deems just.

## COUNT II

### RETALIATION IN VIOLATION OF THE ADA

71. Ms. Sloan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

72. The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Plaintiff must prove: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004); Lackey v. Heart of Lancaster Regl. Med. Ctr., 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

73. Ms. Sloan engaged in a protected employee activity when she made Defendant fully aware of her association with a disabled individual and her need for accommodation when her child experienced seizures.

74. Defendant's adverse action occurred within close temporal proximity with Ms. Sloan's protected activity.

75. Defendant's actions were retaliatory and bear a causal connection with Ms. Sloan's real and/or potential needs of reasonable accommodation(s).

76. The actions of Defendant were intentional, knowing, and in reckless disregard to the rights of Plaintiff.

77. As a direct and proximate result of the aforementioned conduct, Ms. Sloan suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

WHEREFORE, Plaintiff, Janet Sloan hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Sloan requests this Court award her back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees and any other relief this Court deems just.

## COUNT III
### FAILURE TO ACCOMMODATE IN VIOLATION OF
### THE ADA AND THE PHRA

78. Ms. Sloan incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

79. To prevail on a claim of failure to accommodate, Plaintiff must establish that "(1) the employer knew about her disability; (2) she requested accommodations or assistance for his

disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted).

80. Defendant was informed of and knew about Ms. Sloan's association with a disabled individual.

81. Plaintiff requested accommodations or assistance for her disability when she called off work due to her child's hospitalizations.

82. Defendant did not make a good faith effort to assist Ms. Sloan in seeking any form of accommodations.

83. Ms. Sloan could have been reasonably accommodated but for Defendant's lack of good faith, as Defendant failed to engage in the interactive process in any capacity.

84. As a direct and proximate result of the aforementioned conduct, Ms. Sloan suffered actual damages, including, but not limited to, lost wages, emotional distress and severe inconvenience, all in the past, present, and future.

85. The actions of Defendant were intentional, wanton, and willful, such that punitive damages are warranted.

WHEREFORE, Plaintiff, Janet Sloan hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Sloan requests this Court award her back pay, front pay, any other compensatory and punitive damages, costs, and reasonable attorney's fees and any other relief this Court deems just.

## COUNT IV
## INTERFERENCE IN VIOLATION OF THE FMLA

86. Ms. Sloan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

87. An eligible employee is entitled to a total of 12 work weeks of leave during any 12-month period due to the birth of their child, adoption placement, caring for a close family member with a serious health condition, having a serious health condition, certain active-duty obligations by family members, and a qualifying need under the Emergency Family Medical Leave Expansion Act. 29 U.S.C. § 2612(a)(1).

88. An eligible employee under the FMLA has been employed with their employer for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. 29 U.S.C. § 2611(2)(A).

89. "A 'serious health condition' is defined as 'an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, . . . or (B) continuing treatment by a health care provider.'" *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (quoting 29 U.S.C. § 2611(11)).

90. The FMLA states that it shall be unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a).

91. In order to demonstrate a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the Plaintiff was entitled to FMLA leave; (4) the Plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the Plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185,

191–92 (3d Cir. 2014) (citing to *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also, *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

92. Ms. Sloan is an eligible employee pursuant to the FMLA.

93. Defendant qualifies as an employer subject to FMLA requirements.

94. Ms. Sloan's son's epilepsy constitutes a serious health condition pursuant to the FMLA making Ms. Sloan eligible for leave.

95. Ms. Sloan gave Defendant notice of her need for leave when she called off work in July of 2022 due to her son being hospitalized from a cluster seizure.

96. Defendant's refused and failed to offer Ms. Sloan any form of leave in order to care for her son's disability.

97. As a direct and proximate result of the aforementioned conduct, Ms. Sloan suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, and severe inconvenience all in the past present and future.

98. Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Sloan.

WHEREFORE, Plaintiff, Janet Sloan hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Sloan requests this Court award her back pay, front pay, liquidated damages, any other compensatory and punitive damages, costs, and reasonable attorney's fees and any other relief this Court deems just.

## COUNT V
## RETALIATION
## IN VIOLATION OF THE FMLA

99. Ms. Sloan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

100. The FMLA states that it shall be unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a).

101. To succeed on a claim for FMLA retaliation, a Plaintiff must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir.2012).

102. To demonstrate a causal connection, a Plaintiff generally must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007).

103. Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

104. Ms. Sloan invoked her right to FMLA leave by calling off and acting in accordance to UPMC's call-off policies to care for her son after he experienced a seizure.

105. Ms. Sloan suffered an adverse employment action when Defendant denied her the opportunity to work overtime and ultimately terminated her.

106. Defendant's actions were the proximate and legal cause of Ms. Sloan's injures, harm, and damages.

107. Defendant's actions were willful, wanton, intentional, and done in conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff, Janet Sloan, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Sloan requests this Court award her back pay, front pay, liquidated damages, any other compensatory and punitive damages, costs, and reasonable attorney's fees and any other relief this Court deems just.

**JURY TRIAL DEMANDED.**

Respectfully Submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date:   December 5, 2023          By:_____
Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
*Counsel for Plaintiff*